Fokd, J.,
delivered the opinion of the Court.
This case raises four principal questions for consideration.
1. Upon a verdict for an entire farm, whether a judgment for only part of the farm, will not be fatally variant from the verdict ?
2. Whether an erroneous decree of the Orphans’ Court shall be considered valid until reversed ; or whether it may be rejected as a nullity ?
3. Whether a fraudulent sale and conveyance of land, made under a decree of the Orphans’ Court, is voidable at law?
4. Whether the sale and conveyance to David Smith, were bona fide, or fraudulent?
First. It is oertainly true, as Lord Kenyon said, in Doe v. Wippell, 1 Esp. Rep. 360, “ that under a demise of the whole, an undivided moiety may be recovered. 1 Saund. PI. and Ev. 549. But here is a verdict for the whole farm; and if we render judgment for only a part of it, we shall make a variance between the verdict and judgment, which would be fatal on a writ of error. But should a judgment be considered proper for the twentieth part, I consider it to be the true and manifest intent of the submission, that the court should modify the verdict as well as the judgment, to suit the law arising on the pleadings, evidence and facts of the case. The verdict was evidently pro forma for this purpose, and the submission leads, under any other construction, to absurdity ; for why should the Chief Justice or defendant force a verdict for the whole on the plaintiff; when he asked at the trial, for only a twentieth part, and the demise not inconsistent with it? I think this matter produces no difficulty.
Second. Whether an erroneous decree of the Orphans’ Court, shall be considered valid until reversed: or whether it may be rejected as a nullity? The case shows a decree exemplified from *76 the records of the Orphans’ Court under their seal, which has never been reversed or set aside. The plaintiff insists, that no reversal was necessary; that the Orphans’ Court is created with a limited jurisdiction; that its powers are to be exercised by statute, with certain precautions and restrictions; that their jurisdiction is not made to exist without them; that a substantial compliance with those precautions and restrictions, must appear on the face of their proceedings ; for that the court can intend nothing in favor of a limited jurisdiction, which does not appear; and that any attempt to cast off those precautions and restrictions, and exercise the jurisdiction without them, puts their proceedings out of court; that they ave. coram nonjudice, and void on the face of them. That so it was expressly holden in two cases in 8alh. 523, of Turner v. Beale, and Woodrington v. Deverill; which cases are to this effect; a statute gave jurisdiction to the justices of Sessions, on application being made to them, by persons of a certain description, who were imprisoned for debt, to discharge them from imprisonment; and a discharge by the justices of Sessions being pleaded, by a prisoner, and the discharge not setting out that the prisoner applied to the Sessions for it, nor showing that he had the qualifications required by the statute, the discharge of the Sessions was rejected without any reversal. Holt, C. J. said, the Sessions cannot intermeddle, but on application ; and the discharge must show the whole matter. And Powell, J. said, if this be made good, the court can never know when particular j urisdictions act with authority, and when not. To which, Holt, C. J. agreed. So in Rex. v. Croke, Cowp. Rep. 26; a statute gave jurisdiction to the Sessions of Surrey, on application of the corporation of London, to assess by j ury, the value of certain lands necessary for a road; and to determine to what person and in what proportions, the money should be paid to each person. Objections being taken on Certiorari, to the assessment ; after a full argument, the court by Lord Mansfield said, it was a special authority, to particular persons, and must be strictly pursued, and appear to be so, on the face of the order: and the inquisition was set aside for not showing, on its face, that the corporation of London had applied for it, nor that the value was apportioned according to the statute.
A jurisdiction to decree a sale of any person’s land, after his *77 death, is insisted not to be given to the Orphans’ Court, absolutely ; but only on condition of exercising it with certain fixed precautions; that the power, and the precautions, are made inseparable, and cannot exist apart; that wherever one is not, the other is not; they appear or disappear together ; and the appearance of only one, affords no legal presumption of the existence of the other. Row the statute, Rev. L. 435, sec. 19, gives no authority to the court to decree a sale of real estate, it is argued, till after an administrator has exhibited an account of the personal estate, and of the debts, under oath ; just as none was given to the sessions to discharge a debtor without his previous application, yet the Orphans’ Court showing, in their decree, no oath, this court must take it that none was made, it having no authority to look for one out of the record • but should it even resort to the files of the court, that nothing be found there but the form of an affidavit, sworn before no body having authority to administer an oath, (the clerk instead of the judge,) so that no indictment would lie on it however false. Again, that the second section requires another essential precaution, without which, no power to decree a sale, is granted; it is the giving to all persons interested in the estate, six weeks previous notice of the day on which the court will hear their objections ; but that this decree was made three terms after the day appointed, without an opportunity for those interested in preserving the estate, to be present, or to be heard, or even to know when the act was done. From all which, is drawn a conclusion, that this was a self created jurisdiction, without law or authority ; that any other set of men might as well have made the decree, and that for want of authority, the proceeding, in itself is null and void, and that no reversal could make it more so.
Row if the decree had been removed into this court by Certiorari, it would have been reversed without a moment’s hesitation, if upon receiving our writ, the Orphans’ Court had sent up their record in the present form. But before sending it up, they might have amended it, and amended it according to truth and facts, for aught we know, so as to remove these exceptions to the jurisdiction, and every other exception that has been taken. Let us suppose that the affidavit of the administrator before the Surrogate, was rejected by the court, and that he made another and a *78 proper one before the court would proceed ; which proper affidavit is also on the files of the court; or if lost, is within the recollection of the court, and can be substantiated by an official or sworn copy, of that date. Suppose the time advertised for persons to show cause, was really and truly, March term, 1822, and that June term, 1821, is a mere misprision. Suppose the amount of reported debts, far exceeded the highest estimated value of the land ; whereupon the court ordered it to be all sold ; and that the entry in this discretionary form, is, in truth, an error of the clerk, in drawing the order. An opportunity of amending the record so as to make it speak the truth, was afforded to the court below, in Rex v. Croke, where the proceeding was by Certiorari; but in Sallceld, where the case came up between other parties, the record was rejected as a nullity. And this decision of Lord Holt, is not impugned in the subsequent one by Lord Mansfield ; it is on the contrary a strong confirmation of Lord Holt’s principle; and if it had come up between other parties, Lord Mansfield likewise would have rejected the record as a nullity. The consequences are of serious import; for the persons acting as judges, (without having any jurisdiction,) the persons procuring such a decree, and the civil officers executing it, became liable in damages to all persons injured by it. Bigelow v. Stearns, 19 Johns. 39, Walbridge v. Hall, 3 Verm. Rep. 114. Therefore the consequence to courts, judges, parties, and executive officers, requires a careful scrutiny of the principle, so broadly assumed by the plaintiff’s counsel, that a court of limited jurisdiction, must show on the face of the record, a compliance with every regulation prescribed for the exercise of its power, by statute, or its proceedings will be regarded as a nullity. He does not say so of courts of general, but only of limited jurisdiction; and therefore what is meant by a limited jurisdiction, ought to be clearly understood.
I apprehend the term, “ limited jurisdiction,” to be somewhat ambiguous ; and that-the books sometimes use it without due precision. Our Supreme Court is limited, by acts of the legislature ; so likewise is the court of Common Pleas ; and the newly constituted Circuit Courts; yet each of them exercises a general jurisdiction. The word limited, seems to be used sometimes carelessly instead of the term special; for I take the true distinc *79 tion between courts to be, such as possess a general, and such as have only a special jurisdiction, for a particular purpose; or clothed with special powers, for the performance of specific duties, beyond which they have no manner of authority: and these special powers to be exercised in a summary way; either by a tribunal already existing for general purposes; or else by persons appointed or to be appointed in some definite form. Such tribunals with special powers for adjudicating in particular cases, under the various names of commissioners, surveyors, appraisers, committees, directors, overseers and the like, abound in our statute book ; little or in no wise relating to the general administration of justice; whose modes of proceeding are prescribed in the statutes by which they are erected; and unless their proceedings, on the face of them, show a compliance with the directions required by the statute under which they act, it never could be known whether they acted within their jurisdiction, or exceeded it. And each case, cited in support of the plaintiff’s position, was that of a tribunal empowered for a special purpose, and that alone; as to liberate from confinement certain prisoners; to make an inquest concerning certain water, or to inquire respecting the value of certain land; and there terminated their functions.
But the Orphans’ Court is not organized for a single purpose; it has a general jurisdiction as broad as the Common Pleas, or circuit Court, or perhaps the Supreme Court itself, exclusive of its appellate and superintending authority. Like them it has a permanent-location, a public seal, established terms, records not ambulatory, but fixed in the custody of a distinct officer '; it has organized process, executive officers, and its functions do not expire with the fulfilment of any particular duty. The statute of the 16th of December, 1784, Pal. Rev. Laws, 59, though made as far back as the revolution, did not create a court before unknown; it did no more than give a new dress to powers coeval with the province, and which, the Ordinary and his Surrogates had always exercised in the Prerogative Court; professing in its title, only to ascertain, to regulate and to establish. It confers no attribute of a special court, for one purpose only; but a jurisdiction for the general administration of justice, within certain great departments.
*80 The presumptions in favor of limited and general jurisdictions, are the same. In Turner v. The Bank of North America, 4 Dal, Rep. 8, the Supreme Court of the United States acknowledge their Circuit Court to have only a limited jurisdiction, extending to citizens only of different States. It distinguishes jurisdictions into such as are general, such as are limited, and such as are special or inferior; and decides that, the Circuit Court, though limited, is “ entitled to as liberal intendrhents or presumptions in favor of its regularity, as any Supreme Court.” Therefore (if the Orphans’ Court exercises a limited jurisdiction, still it is not a special one, and is entitled to the same liberal presumptions, as any Supreme Court; that .what is done, is rightly done until reversed.) And this court recognized the same principle, as far as it could do so, in relation to a decree of the Orphans’ Court, which came before us on Certiorari, in the State v. Conover, 4 Hals. 338. The decree was reversed for not showing a compliance with the requirement (as it might have been made to do, if such was the fact) that the personal estate should appear to have been all applied, prior to any decree for selling the real estate; and because it did not designate the part of the real estate to be sold. And they referred to a decree of Chancellor Williamson in Wilmurt v. Morgan, wherein the chancellor decided, that though a decree of the Orphans’ Court might be reversed for error and irregularity in those respects, yet being the decree of a competent court, in a matter of which they had jurisdiction, it could not be disregarded as a nullity, when incidentally brought into question in another court, and though the latter point did not, in that case, come properly before the Supreme Court, we declared that we did not mean to countenance any conclusion that we differed from the opinion of the chancellor. But we can now express a direct opinion, that a decree of the Orphans’Court must be considered valid,, until, it is reversed. I do not rest my opinion on the competency of the court, nor on its having jurisdiction of the matter; for the court was competent, and also had jurisdiction of the matter, in the case which Lord Holt treated as a nullity; but on the ground that it is no special jurisdiction for a particular purpose, but a permanent court for the administration of justice; that its powers are inexhaustible by action; that its jurisdiction spreads over vast de *81 partmcnts of matter; therefore that its decrees are entitled to every presumption in favor of their regularity, that the judgments of this court are entitled to, and such as must be considered legal till reversed by due course of law.
Third. The next question is, whether a sale and conveyance under this decree, if fraudulently made by the administrator, can be avoided in a court of law, or whether relief can be had only in a court of Equity. The cases preclude all doubt on this point. In Foxcroft v. Devonshire, 2 Bur. 931, the court held, that “ fraud is always a question of law.” In Bright v. Eynon, 1 Bur. 390, Lord Mansfield said, “fraud or covin may in judgment of law avoid every kind of act.” Denison, J. said, “ fraud is sufficient to invalidate a defeasance in a court of common law.” Foster, J. said, “fraud will invalidate in a court of law, as well as in a conrt of equity.” Again, “ fraud avoids a contract ah initio, at law and in equity.” Chit, on Contr. 527 a. note 9. Again, “ there are numberless cases at law, in which a deed has been defeated by matter in pais,” 1 Fonhl. 122, note 3. And in Den v. McKnight, 6 Hals. 392, per Ewing, C. J. “ the lessors of the plaintiff may avail themselves of the objection to the validity of these deeds, in the present action of ejectment, and are not obliged, in order to impugn them, to resort to the court of Chancery ; this position is settled here by the case of Den v. Wright, 2 Hals. 175. These authorities show that a fraudulent deed may be invalidated in a court of law, if the fraud can be sufficiently proved.
Fourth. Whether the sale and conveyance to David Smith, were bona fide or fraudulent ? The case establishes facts from which fraud might be inferred by a jury. Executors, administrators, guardians or trustees entrusted with the selling of real estate, can never sell it to themselves. An administrator so entrusted, cannot contract for the purchase, because the seller and purchaser would constitute one person, and a valid contract requires two parties. Every man is partial to his own interest; and this is a maxim not required to be proved, for the law will not allow it to be controverted. An administrator appointed to sell real estate, becomes the only person in the world who cannot purchase it, either directly and openly, or secretly and covertly through another person whom he employs for the purpose. It is *82 not enough for a trustee in such a case, to say, the sale was a public one, and you can show no fraud, for it is in his power to conceal it. Every such sale must be considered absolutely void in a court of common law, because it has not the power of converting the purchaser into an accountable trustee; whereas a court'of Equity will sometimes affirm the sale, and give a better remedy for the fraud, by making the purchaser give up all the profits he has made by it.
But the fact of striking off the estate to the highest bidder, and conveying it to him by deed for valuable consideration, being distinctly found in the case, are to be considered by the court as bona fide acts, unless found by the ease to be otherwise. If the considerations of both the deeds, are fictitious, and Smith had no interest in either of them ; if they are no more than a contrivance by which Peter Obert sold the estate to himself, the evidence contained in the case, of these matters, cannot be weighed by the court, but must be referred to a jury. The whole cause will turn, in my opinion, upon this point, and it being a mere matter of fact-, a venire de novo ought to be awarded for the settlement of it.
Let a venire de novo issue, and the costs abide the event of the suit..

New trial ordered.

Cited in Den v. O’Hanlon, 1 Zab. 597; Hess v. Cole, 3 Zab. 122; O’Hanlon v. Den, Spencer 50; State v. Lewis, 2 Zab. 566; Stryker v. Vanderbilt, 1 Dutcher 500; Carrow v. Martin, 2 Dutcher 597; Stokes v. Middleton, 4 Dutcher 36; State v. Town of Orange, 3 Vr. 55; Chamberlain v. Hopper, 5 Vr. 226; Russel v. Work, 6 Vr. 319 ; State v. Com. Coun. of Trenton, 7 Vr. 200; Scott v. Gamble, 1 Stockt. 235; Huston v. Cassady, 2 Beas. 230; Ordinary v. Kershaw, 1 McCart. 529; Blauvelt v. Ackerman, 5 C. E. Gr. 146.